UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEANNE U. RAFFERTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15-CV-1543 CAS |
| | ) |
| KATHE RAFFERTY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This removed matter is before the Court on defendant Kathe Rafferty's ("Kathe") motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1] Plaintiff Jeanne U. Rafferty ("Jeanne") opposes the motion. Kathe did not file a response and the time to do so has passed, so the motion ready for decision. For the following reasons, the Court will grant Kathe's motion to dismiss for lack of personal jurisdiction.

**I. Background**

This action arises out of a dispute over entitlement to group Basic Life Insurance benefits payable by reason of the death of Thomas F. Rafferty. The life insurance benefits arise under an ERISA[2]-regulated employee welfare benefit plan originally sponsored by The May Department Store Company, now known as Macy's Retail Holdings, Inc., and funded by a group life insurance policy issued by defendant Metropolitan Life Insurance Company ("MetLife"). Mr. Rafferty was

---

[1]The Court does not mean any disrespect by referring to these parties by their first names. Because both Jeanne and Kathe share the last name of Rafferty, and there are other defendants in this action, the Court refers to them by their first names for clarity and ease of reference.

[2]The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461 ("ERISA").

the late husband of Kathe and the ex-husband of Jeanne. Jeanne and Kathe each claim entitlement to 100% of the Policy proceeds under separate beneficiary designations.

Jeanne was married to Thomas Rafferty from 1948 to 1977. Jeanne alleges that Mr. Rafferty began seeing Kathe romantically while still married to her, and Jeanne filed for divorce in 1976. Jeanne alleges that as part of their Separation Agreement, and as required by the terms of the 1977 Decree of Dissolution and a subsequent court order, Mr. Rafferty was to maintain the Policy in force for her benefit and keep her as the 100% irrevocable beneficiary thereof. On July 2, 1982, Mr. Rafferty executed a beneficiary designation form designating Jeanne as the sole primary beneficiary of 100% of the Policy's life insurance benefits.

Mr. Rafferty married Kathe in June 1977 and lived with her in Missouri until June 1989, when they moved to Erie, Pennsylvania. Kathe spent a week in Missouri in 1991 and has not been here since that time. On February 3, 2014, Mr. Rafferty executed a beneficiary designation form designating Kathe as the sole primary beneficiary of 100% of the Policy's life insurance benefits. Mr. Rafferty died of a brain tumor on May 22, 2015 at the age of 92.

Jeanne and Kathe each made claim to the Policy proceeds. On July 14, 2015, MetLife notified Jeanne and Kathe that their claims were adverse to one another and could not be resolved by MetLife without exposing itself and the Plan to the danger of double liability. MetLife stated that it was therefore required to file an interpleader action but suggested that Jeanne and Kathe attempt to resolve the matter amicably to preserve the Policy proceeds from litigation costs. On August 14, 2015, Kathe filed an action in the U.S. District Court for the Western District of Pennsylvania (the

"Pennsylvania action"), seeking a declaratory judgment under ERISA that she was the sole beneficiary of the Policy, and naming as defendants MetLife and Jeanne Rafferty.[3]

On September 3, 2015, Jeanne filed this action in the Circuit Court for St. Louis County, Missouri, asserting state law claims and naming as defendants Kathe Rafferty, MetLife, and Macy's Retail Holdings, Inc. ("Macy's"). Jeanne alleges she is entitled to the Policy proceeds under the Decree of Dissolution and state court orders. Jeanne also alleges that Mr. Rafferty had severe memory loss and Alzheimer's Disease and lacked the mental capacity to execute a beneficiary designation on February 3, 2014. Count I of the Petition seeks a declaration that the 2014 beneficiary designation was procured by Kathe's fraud, duress and/or undue influence, and that Kathe or someone on her behalf executed and/or compelled Mr. Rafferty to execute the 2014 beneficiary designation. Counts II, III and IV assert state law tort claims against Kathe for fraud, undue influence, and tortious interference with contractual relationship and/or expectancy, all in connection with the 2014 beneficiary designation. Count V asserts a state law tort claim against Macy's for negligent misrepresentation, based on Macy's incorrect representation to Jeanne in February 2015 that she was still designated as the sole primary beneficiary of the Policy.

Defendant MetLife removed the case to this Court on October 7, 2015 on the basis of federal question jurisdiction under ERISA. The Notice of Removal asserts that the state law claims in Counts I and V of the Petition are completely preempted by ERISA, which provides the exclusive federal remedy for resolution of claims by employee welfare benefit plan participants and their beneficiaries and assignees, even when the ERISA-related nature of the action does not appear on the face of the Petition, citing Aetna Health Inc. v. Davila, 542 U.S. 200 (2004). The Notice of

---

[3]The Pennsylvania action is captioned Rafferty v. Metropolitan Life Ins. Co., et al., No. 1:15-CV-206 BR (W.D. Pa.).

Removal asserts that because the claims in Counts I and V of the Petition arise under the laws of the United States within the meaning of 28 U.S.C. § 1331, the entire case is removable pursuant to 28 U.S.C. § 1441(c). Finally, the Notice of Removal asserts that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 over the state law claims in Counts II-IV, and indeed the entire case, as the parties are of diverse citizenship and the matter in controversy exceeds the sum of $75,000.

Defendant MetLife filed its Answer to the Petition and filed a cross-claim and counterclaim for interpleader against Kathe and Jeanne, respectively, under ERISA and Rule 22, Fed. R. Civ. P., asking that it be permitted to pay the Policy proceeds into Court and be discharged from any further liability. Kathe filed the instant motion to dismiss for lack of personal jurisdiction on October 23, 2015, and on November 12, 2015 filed her Response to MetLife's cross-claim for interpleader. Kathe's Response to the cross-claim did not assert a defense of lack of personal jurisdiction.

**II. Legal Standard**

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)). "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." Id. (internal citations, quotation marks and quoted cases omitted). The evidence must be viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in her favor in deciding whether the plaintiff made the requisite showing. Id. (cited case omitted). The burden of proof does

4

not shift to the party challenging jurisdiction, however. Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014)

"The basis for exercising personal jurisdiction over a non-resident party in Missouri is Missouri's long-arm statute." Myers v. Casino Queen, Inc., 689 F.3d 904, 910 (8th Cir. 2012). "Missouri's long-arm statute authorizes personal jurisdiction over defendants who, inter alia, transact business, make a contract, or commit a tort within the state." Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 (8th Cir. 2011) (citing Mo. Rev. Stat. § 506.500.1 (2000)). "In adopting the long-arm statute, the Missouri legislature 'intended to provide for jurisdiction, within the specific categories enumerated in the statutes [e.g., transacting business or making a contract within the state,] to the full extent permitted by the due process clause.'" K-V Pharm. 648 F.3d at 592 (bracketed text in original) (quoting State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)). In all instances, the long-arm statute requires that the cause of action arise from the doing of the enumerated act. Mo. Rev. Stat. § 506.500.3 ("Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.").

Further, "Even if personal jurisdiction over a defendant is authorized by the forum state's long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause." Viasystems, 646 F.3d at 594. "The touchstone of the due-process analysis remains whether the defendant has sufficient minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (internal quotation marks and quoted case omitted). "The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such

a degree that it should reasonably anticipate being haled into court there[.]" Id. (internal citation, quotation marks and quoted case omitted).

Minimum contacts for purposes of personal jurisdiction may be evaluated under two theories: general jurisdiction and specific jurisdiction. Id. The Supreme Court recently stated that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014) (internal citations omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" Id. (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853-54 (2011)).

"Specific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.' Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008)." Johnson v. Arden, 614 F.3d 785, 795 (8th Cir. 2010). Both theories of jurisdiction require "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

**III. Discussion**

As a threshold matter, the Court takes judicial notice that the district court in the Pennsylvania action recently issued an order denying Jeanne Rafferty's motion to dismiss for lack of personal jurisdiction and/or to dismiss under the declaratory judgment act, and her motion to dismiss MetLife's cross-claim for interpleader. See Rafferty v. Metropolitan Life Ins. Co., 2016 WL 153225, at *3-4 (W.D. Pa. Jan. 13, 2016). As a matter of federal comity, and in order to conserve judicial resources and avoid conflicting rulings, this Court on its own motion will stay Jeanne's

claims in Counts I and V that are preempted by ERISA and MetLife's counterclaim and cross-claim for interpleader.

The Court now turns to the issue of personal jurisdiction over the remaining state law counts asserted against Kathe.[4]

    A.  <u>Waiver of Personal Jurisdiction Defense</u>

Jeanne first argues that Kathe has submitted to personal jurisdiction by conduct, by filing a substantive Response to MetLife's interpleader cross-claim that was not limited to a challenge to the Court's jurisdiction, and by affirmatively requesting in the Response that she be declared the proper beneficiary.

Jeanne fails to adequately support this argument, as the cases on which she relies are readily distinguishable. Jeanne cites this Court's statement that the defense of personal jurisdiction "may be waived if it is neither raised by motion before the answer nor asserted in a responsive pleading." Pl.'s Mem. Opp. at 9 (quoting <u>TLC Vision (USA) Corp. v. Freeman</u>, 2013 WL 230254, at *4 (E.D. Mo. Jan. 22, 2013)). Jeanne fails to recognize that Kathe's first filing in this case was a motion to dismiss for lack of personal jurisdiction, unlike any of the cases she cites. For example, in <u>TLC Vision</u>, Judge Webber concluded the defendant waived personal jurisdiction by its conduct, as it appeared at a TRO hearing in which the Court considered the merits or quasi-merits of the case, served discovery requests, moved to increase the bond set by the Court, and asked the Court to

---

[4]Although ERISA provides for nationwide service of process, 29 U.S.C. § 1132(e)(2), the parties do not address this, or whether a defendant may be subject to liability on state law tort claims when she is before the court by way of extraterritorial service of process under § 1132(e)(2). The parties' memoranda address only the standard personal jurisdiction analysis and the Court will therefore do likewise, particularly as it has stayed Jeanne's ERISA claims.

reconsider its order granting the TRO, all before filing a motion to dismiss for lack of personal jurisdiction. Id. at *4.

Other cases Jeanne cites, such as Coastal Air Lines v. Dockery, 180 F.2d 874, 876 (8th Cir. 1950), are also readily distinguishable and therefore unpersuasive. Coastal was a statutory interpleader action regarding insurance proceeds from an airplane crash, to which both Dockery and Coastal Air Lines made claims. Dockery cross-claimed against Coastal for unpaid rent on the aircraft. Coastal answered both the interpleader claim and cross-claim, and only after judgment was entered against it argued for the first time on appeal that the district court lacked jurisdiction to "entertain the cross-claim by one interpleaded party against another, but was limited to a disposition of the fund in court." Id. at 875. The Eighth Circuit stated that by appearing in the interpleader action and failing to interpose an objection to the court's jurisdiction on the cross-claim until appeal, Coastal waived any objections to the district court's jurisdiction. Id. at 877. The issue in Coastal was not one of personal jurisdiction, but of the court's jurisdiction in an interpleader case.

In the absence of any persuasive authority to support the waiver argument, the Court finds that Kathe did not waive her personal jurisdiction defense merely by answering MetLife's cross-claim for interpleader, as her first filing in this case was a motion to dismiss for lack of personal jurisdiction and she has not filed any other motions, propounded any discovery, or appeared before the Court for a hearing. Cf. TLC Vision, 2013 WL 230254, at *4.

Before leaving this issue, the Court pauses to address Jeanne's misleading attribution of the following quote from Nationwide Engineering & Control Systems, Inc. v. Thomas, 837 F.2d 345, 347 (8th Cir. 1988): "If the appearing party requests relief or discloses a purpose that goes beyond challenging the jurisdiction of the court over the subject matter or the parties, the appearance will be considered general, and all jurisdictional challenges will be deemed waived." Jeanne fails to

disclose that this is not a statement by the Eighth Circuit on federal personal jurisdiction standards, but instead is that Court's quotation from the Iowa Supreme Court's decision in In re Estate of Dull, 303 N.W.2d 402, 407 (Iowa 1981). In Nationwide, the Eighth Circuit considered whether the defendants' appearance in Iowa state court *prior to removal to federal court* amounted to a "general appearance" *under Iowa law* as it existed at the time, such that the defendants failed to properly preserve their personal jurisdiction defense *while in state court* and therefore could not assert it in federal court following removal. Id. at 347-48. Jeanne's use of the quotation from Nationwide, attributed to the Eighth Circuit, misrepresents to this Court the appropriate legal standard in the Eighth Circuit. Jeanne's counsel must be cautious in the future to avoid such misleading citation to legal authority.

B. Missouri Long-Arm Statute

Jeanne asserts that this Court has personal jurisdiction over Kathe pursuant to the "commission of a tortious act within this state" provision of Missouri's long-arm statute, Mo. Rev. Stat. § 506.500.1(3). Jeanne asserts that the following tortious conduct satisfies the long-arm statute: (1) Kathe's affair with Mr. Rafferty in Missouri that led to the dissolution of the marriage between him and Jeanne and the execution of the separation agreement and subsequent court orders; and (2) Kathe's exertion of undue influence over Mr. Rafferty and/or fraudulent execution of a purported beneficiary designation, which set in motion a course of action deliberately designed to injure Jeanne in Missouri. Jeanne asserts that because Mr. Rafferty's obligations to her with respect to the Policy arose in Missouri and were enforced by Missouri courts, it was foreseeable that the consequences of Kathe's actions would be felt in Missouri.

The "commission of a tortious act" prong of the long-arm statute is broadly construed. See Bryant v. Smith Interior Design Group, Inc., 310 S.W.3d 227, 232 (Mo. 2010) (en banc). Missouri

9

courts have interpreted it to include "extraterritorial acts of negligence producing actionable consequences in Missouri." State ex rel. William Ranni Assocs., Inc. v. Hartenbach, 742 S.W.2d 134, 139 (Mo. 1987) (en banc); see Myers v. Casino Queen, Inc., 689 F.3d 904, 912 (8th Cir. 2012). The Eighth Circuit has adopted a foreseeability standard to be applied when evaluating whether jurisdiction is appropriate over an extraterritorial tortious act occurring with actionable consequences in Missouri. Myers, 689 F.3d at 911. Under this standard, if a defendant can reasonably foresee his or her negligent actions having consequences felt in Missouri, jurisdiction is authorized. Id. In addition, a party seeking to invoke long-arm jurisdiction based on a defendant having committed a tort within Missouri must make a prima facie showing of the validity of his tort claim. William Ranni Assocs., 742 S.W.2d at 139.

As a threshold matter, Jeanne's assertions regarding Kathe's affair with Mr. Rafferty do not support jurisdiction under the long-arm statute, because Jeanne's tort claims do not arise out of the affair. In all instances, the long-arm statute requires that the cause of action arise from the doing of the enumerated act. Mo. Rev. Stat. § 506.500.3.

Under Missouri law, a claim of tortious interference with a contract or valid business expectancy consists of the following elements: (1) a contract or valid business expectancy; (2) the defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach; (4) absence of justification; and (5) damages resulting from the defendant's conduct. Nazeri v. Missouri Valley Coll., 860 S.W.2d 303, 316 (Mo. 1993) (en banc) (citation omitted). Under Missouri law, "[a] plaintiff has the burden of producing substantial evidence to establish a lack of justification," and "[i]f the defendant has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected, then the plaintiff must

10

show that the defendant employed improper means in seeking to further only his own interests." Id. at 316-17.

The Petition alleges facts concerning each element of a tortious interference cause of action under Missouri law. Assuming that Kathe had a legitimate economic interest in the Policy proceeds, Jeanne's assertions regarding Kathe's alleged exercise of undue influence upon Mr. Rafferty or her alleged fraudulent execution of the beneficiary designation are sufficient to allege absence of justification. See Nazeri, 860 S.W.2d at 317 ("If the defendant has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests."). Further, the Court finds that Kathe could have reasonably foreseen her conduct having consequences felt in Missouri, as she knew the previous sole beneficiary to the Policy proceeds resides here. See Myers, 689 F.3d at 911 (foreseeability standard). The Court therefore finds that Jeanne alleges sufficient facts to make out a prima facie case of tortious interference, and concludes the commission of a tortious act prong of the Missouri long-arm statute is met.

C. Due Process Principles

The due process portion of Jeanne's personal jurisdiction argument is limited to asserting that the Court has specific jurisdiction over Kathe, and the Court limits its discussion accordingly. To establish specific jurisdiction, Jeanne must demonstrate both that (1) "a defendant's conduct was covered by the [Missouri] long-arm statute," and (2) "the exercise of jurisdiction comports with due process requirements." Myers, 689 F.3d at 909 (citation omitted). The first part of the analysis is controlled by state law, as discussed above, and the second by federal law. Fairbanks Morse Pump Corp. v. ABBA Parts, Inc., 862 F.2d 717, 718-19 (8th Cir. 1988). The Court now examines whether the exercise of jurisdiction over Kathe would comport with due process principles.

A federal court may exercise diversity jurisdiction over a nonresident defendant only if the defendant has sufficient minimum contacts with the forum that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and quoted case omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson, 357 U.S. at 253. Due process is satisfied and jurisdiction may be exercised when the defendant's contacts with the forum state are such that it "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).

"Five factors determine whether sufficient contacts exist to support the exercise of personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. The first three factors are primary, but all five and the totality of the circumstances determine whether personal jurisdiction exists." Dairy Farmers, 702 F.3d at 477 (internal quotation marks and quoted case omitted). In all cases, specific jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." Steinbuch, 518 F.3d at 586.

When the cause of action involves a tortious act, a plaintiff also can obtain specific jurisdiction over a nonresident defendant by employing the "effects test" of Calder v. Jones, 465 U.S. 783, 789-90 (1984). Under the Calder effects test,

12

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].

Johnson, 614 F.3d at 796 (internal quotation omitted). The Calder effects test does not replace the Eighth Circuit's five-part test for personal jurisdiction, but "requires the consideration of additional factors when an intentional tort" is alleged. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir. 1991). The Eighth Circuit "construe[s] the Calder effects test narrowly, and hold[s] that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." Johnson, 614 F.3d at 797; see also Dakota Indus., Inc., 946 F.2d at 1391 (stating that under Calder, a defendant's acts be "performed for the very purpose of having their consequences felt in the forum state").

1. *Specific Jurisdiction*

Jeanne's argument in support of specific jurisdiction is as follows:

> This case involves the interpretation of Missouri contracts and judgments. The Separation Agreement, Missouri Judgment and Missouri Enforcement Action arose out of a divorce proceeding in Missouri that was instituted after Defendant began an affair with the Decedent, in Missouri. Given that Defendant's own conduct, including tortious conduct, is the cause for this lawsuit in the first place, the quality of Defendant's contacts with Missouri are significant. Additionally, Missouri certainly has an interest in providing its resident with a forum to litigate tort claims. See Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997). Finally, the convenience of the parties also favors this Court exercising jurisdiction over Defendant. Plaintiff is an 89-year-old Missouri resident, and it is difficult for her to travel. See Exhibit 2, Affidavit, ¶¶ 2-4.

Pl.'s Mem. Opp. at 14.

It is uncontroverted that Kathe met Mr. Rafferty in Missouri and they lived here as a married couple from 1977 to 1989. Kathe's affidavit states in pertinent part that she and Mr. Rafferty moved

from Missouri to Pennsylvania in 1989, she spent one week in Missouri in 1991 and has not returned here since that time. Jeanne does not allege any other contacts with Missouri by Kathe.

### a. Nature and Quality of Contacts

With respect to first factor of the five-factor test, the nature and quality of the defendant's contacts with the forum state, Kathe lived in Missouri from 1977 to 1989, but has had no contacts with Missouri after 1991. Kathe's personal contacts with Missouri are therefore minimal as well as distant in time from the events relevant to this case. Kathe is also alleged to have interfered with a contractual obligation or expectancy entered into in Missouri and Missouri court orders. It is well settled, however, that "[a]s a general matter, the commission of extraterritorial tortious conduct having consequences in Missouri is alone insufficient to satisfy due process." Insituform Techs., Inc. v. Reynolds, Inc., 398 F.Supp.2d 1058, 1066 (E.D. Mo. 2005); see also Peabody Holding Co. Inc. v. Costain Group PLC, 808 F.Supp. 1425, 1437-38 (E.D. Mo. 1992) ("a plaintiff may not invoke tortious long-arm jurisdiction consistent with due process where the non-resident defendant had no contact with Missouri besides the extraterritorial acts having consequences in Missouri.").

The Court finds that even when viewing the facts in the light most favorable to Jeanne, she does not meet her "minimal" burden to show that this factor weighs in favor of the exercise of personal jurisdiction over Kathe.

### b. Quantity of Contacts

The second factor in the five-factor test of personal jurisdiction is "the quantity of those contacts" with the forum state. Myers, 689 F.3d at 911. As stated above, Kathe has had no contacts with Missouri since 1991 apart from the alleged tortious interference itself, which cannot be the sole basis for personal jurisdiction. See Insituform, 398 F.Supp.2d at 1066. Viewing the facts in the

14

light most favorable to Jeanne, the Court concludes she has not met her "minimal" burden of proof with respect to the quantity of contacts with the forum state.

### c. Relationship Between the Contacts and the Cause of Action

The third element in the five-element test of personal jurisdiction is the relationship of the contacts with the cause of action. Here, Kathe's contacts of living in Missouri in a marital relationship with Mr. Rafferty from 1977 to 1989 have only the most attenuated relationship to the cause of action and are therefore insignificant to the analysis. The case arises out of Jeanne's allegations that Kathe tortiously interfered with her contractual or business expectancy rights, but in the absence of proof of other contacts and the other relevant factors, the existence of this factor alone cannot confer jurisdiction.

### d. The Interest of the Forum State and the Convenience of the Parties

The final two elements of the test for personal jurisdiction are secondary to the first three. Myers, 689 F.3d at 911. The fourth element, Missouri's interest in providing a forum for its residents, weighs in favor of the exercise of personal jurisdiction because Missouri has an interest in providing a forum for Missouri residents who claim to have been injured by the effects of a tort committed outside of the state. The fifth factor, the convenience of the parties, is neutral at best because while a trial in Missouri would be convenient for Jeanne, it would not be convenient for Kathe, who resides in Pennsylvania. Further, the location of witnesses such as Mr. Rafferty's physician and the proximity to relevant evidence would probably cause Pennsylvania to be a more convenient forum than Missouri.

### e. "Fair play and substantial justice" in the totality of the circumstances

Finally, due process requires that "[c]ontacts with the forum state must be sufficient that requiring a party to defend an action would not 'offend traditional notions of fair play and

substantial justice.'" Myers, 689 F.3d at 911 (quoting International Shoe Co., 326 U.S. at 316). The Court must consider "the totality of the circumstances in deciding whether personal jurisdiction exists." K-V Pharm. Co., 648 F.3d at 592-93. Here, viewing the totality of the facts in the light most favorable to Jeanne, she has failed to meet her "minimal" burden of proof to show that the balance of the factors weighs in favor of the exercise of personal jurisdiction over Kathe in Missouri. Kathe's lack of contacts with Missouri other than the alleged extra-territorial tortious conduct demonstrates that exercising personal jurisdiction over her here would "offend traditional notions of fair play and substantial justice." Myers, 689 F.3d at 911 (internal quotation marks and citation omitted); see Peabody, 808 F. Supp. at 1437-38.

In addition, the Supreme Court recently reiterated that in a specific jurisdiction analysis, the relationship between a defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum State." Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

> Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. See World–Wide Volkswagen Corp., *supra*, at 291-292. We have consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").

Walden, id. While Jeanne attempts to base personal jurisdiction on Kathe's alleged interference with Missouri contracts or court orders, she does not allege that Kathe entered into agreements or contracts in Missouri. Walden makes it clear that a contract between Jeanne and Mr. Rafferty in Missouri cannot constitute minimum contacts of Kathe with Missouri, because she did not create those contacts. Similarly, orders entered in Missouri court cases involving Jeanne and Mr. Rafferty,

16

to which Kathe was not a party, cannot be considered contacts that Kathe created with the forum state.

There is no evidence that Kathe purposefully availed herself of the privileges of conducting activities within the forum State, thereby invoking the privileges and protections of Missouri law. See Hanson, 357 U.S. at 253. The limited contact Kathe has with Missouri, based solely upon the impact of her alleged tortious activity, is so attenuated that maintenance of a suit would offend traditional notions of fair play and substantial justice. For these reasons, Kathe's motion to dismiss for lack of personal jurisdiction should be granted because her lack of contacts with Missouri are such the exercise of personal jurisdiction over her would violate constitutional due process.

2. *Calder "Effects Test"*

As stated above, the Calder "effects test" requires a prima facie showing that a defendant's actions "(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." Johnson, 614 F.3d at 796. Jeanne argues the Calder "effects test" is met because (1) Kathe committed numerous intentional acts which give rise to the present suit, (2) her actions were uniquely aimed at Missouri given that she "intentionally interfered with Missouri contracts and judgments that were rendered in this State," and (3) the brunt of harm was aimed at Jeanne, a Missouri resident, as she was the party damaged by Kathe's actions. Pl.'s Mem. Opp. at 15.

The Court concludes that Jeanne fails to make a prima facie showing with respect to the second Calder factor, namely, that Kathe expressly aimed her conduct at the forum state. As stated above, the Eighth Circuit construes the Calder "effects test" narrowly, and with respect to the second Calder factor holds that the tortious acts must be expressly aimed at the forum. Johnson, 614 F.3d

17

at 797. Only a defendant's extraterritorial acts taken for the specific purpose of causing harm in the forum state are sufficient to satisfy Calder's "express-aiming requirement." See id.

Jeanne makes the conclusory allegation that Kathe aimed her conduct at Missouri, see Petition at 2, ¶ 5, but pleads no facts to support the allegation. In the fraud count, Jeanne alleges that Kathe obtained a benefit by her fraud, Pet. at 12, ¶ 89; in so doing damaged Jeanne by deleting her as sole beneficiary of the Policy, id., ¶ 90; and showed "complete indifference and a conscious disregard to the rights and damages suffered by Plaintiff." Id., ¶ 93. These allegations do not allege that Kathe expressly aimed her conduct at Missouri.[5] In the tortious interference count, Jeanne alleges that Kathe knew of the contractual relationship or expectancy Jeanne had in being the Policy's sole beneficiary, and intentionally interfered with that relationship or expectancy, but does not allege that Kathe expressly aimed her actions at Missouri for the very purpose of causing harm here, and the record does not support this.

The Petition alleges that Kathe's actions with respect to the beneficiary designation occurred in Pennsylvania. The victim of her alleged undue influence or fraud was necessarily Mr. Rafferty, a Pennsylvania resident. As pleaded, Jeanne alleges that Kathe's conduct was intended to obtain the Policy proceeds as a benefit for herself, not to cause harm to Jeanne in Missouri. The fact that Jeanne was harmed is collateral, and the fact that Jeanne resides in Missouri as opposed to any other state is essentially unrelated to the issue of Kathe's attempt to obtain the Policy proceeds for herself. Jeanne's argument that Kathe's conduct was expressly aimed at Missouri because it interfered with Missouri contracts and judgments is not supported by the factual allegations of her Petition, and is

---

[5]The Petition contains similar allegations in the undue influence count, at paragraphs 99-102.

18

also not supported by any citation to legal authority. As a result, the Court does not address it further.

Because there is nothing in the record to indicate Kathe targeted her conduct toward Missouri with the express intention of causing harm here, Jeanne has failed to plead sufficient facts to make a prima facie showing of the second requirement under Calder. See Dakota Indus., Inc., 946 F.2d at 1391 (personal jurisdiction may be asserted over "non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state") (internal quotation marks and quoted case omitted).

## IV. Conclusion

In this case, viewing the facts in the light most favorable to plaintiff Jeanne Rafferty, plaintiff establishes that defendant Kathe Rafferty's alleged conduct falls within the commission of a tortious act prong of the Missouri long-arm statute, but fails to meet her "minimal" burden of proof to show that the balance of the relevant factors weighs in favor of the exercise of personal jurisdiction over Kathe in this forum. For the reasons discussed above, the Court concludes that Kathe's contacts with Missouri are insufficient to indicate she purposely availed herself of the benefits and protections of the laws of Missouri. 471 U.S. at 482. As a result, to compel Kathe to appear in court in this forum would offend traditional notions of fair play and substantial justice. Further, plaintiff has failed to make a prima facie showing that Kathe's actions were sufficiently directed at Missouri to satisfy the Calder test. Therefore, the Court will grant Kathe's motion to dismiss for lack of personal jurisdiction.

In the interests of federal comity and judicial efficiency, and to avoid potentially conflicting rulings, the Court will stay Jeanne Rafferty's ERISA-preempted claims in Counts I and V, and

Metropolitan Life Insurance Company's counterclaim and cross-claim for interpleader, pending the decision of the U.S. District Court for the Western District of Pennsylvania in <u>Rafferty v. Metropolitan Life Ins. Co., et al.</u>, No. 1:15-CV-206 BR, and will administratively close this case.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Kathe Rafferty's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., is **GRANTED**. [Doc. 12]

**IT IS FURTHER ORDERED** that plaintiff's claims in Counts I and V, and defendant Metropolitan Life Insurance Company's counterclaim and cross-claim for interpleader, are **STAYED** pending resolution of the ERISA declaratory judgment matter <u>Rafferty v. Metropolitan Life Ins. Co., et al.</u>, No. 1:15-CV-206 BR, in the U.S. District Court for the Western District of Pennsylvania.

**IT IS FURTHER ORDERED** that this case will be administratively closed, and may be reopened on motion following the final decision of the court in <u>Rafferty v. Metropolitan Life Ins. Co., et al.</u>, No. 1:15-CV-206 BR (W.D. Pa).

An appropriate order of partial dismissal and administrative closure will accompany this memorandum and order.

/s/ Charles A. Shaw
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  27th  day of January, 2016.